[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
In these consolidated cases,[1] the plaintiff, Morgan Jenkins, appeals from two decisions of the defendant, planning and zoning commission of the town of Greenwich (Commission), granting modifications of site plan and special permit approvals to the applicant-defendants, Old Greenwich Gables Community, Inc. and The Colonnade One at Old Greenwich, Ltd. Partnership (collectively, the Applicant).
Docket No. 162595 (Jenkins I)
By application dated September 26, 1997, the Applicant applied to the Commission seeking to modify a site plan and special permit that had been previously granted by the Commission.[2] (Jenkins I, Return of Record [ROR], Items 4-10 and attachments, Items 13, 17, and 17a.) The Applicant sought the Commission's approval to modify the previous site plan and special permit in order to establish nine permanent parking spaces and a fire lane on the property. (Jenkins I, ROR, Item 4.) The zoning regulations require that, in advance of the hearing on the application, record owners of property abutting and across the street from the property subject to the application be given notice of the pending application. (Jenkins I, ROR, Item 3: Greenwich Zoning Regs., c. 6, § 14(a)(3).) A public hearing on this application was held by the Commission on October 28, 1997. (Jenkins I, ROR, Item 22 pp. 1-3.)
On the same day as the hearing, the Commission approved the application to modify the site plan and special permit. (Jenkins I, ROR, Item 22 p. 4; see also Items 23 and 24.) On November 18, 1997, the plaintiff filed his first appeal, hereinafter referred to as Jenkins I, alleging lack of notice to the plaintiff as required by statute and lack of sufficient evidence to support the Commission's findings and decision. (Jenkins I, Appeal, ¶¶ 7, 8, 12(a), 12(b).)
Docket No. 170006 (Jenkins II)
While Jenkins I was pending, on October 14, 1998 the Applicant again applied[3] for the Commission's approval to modify the site plan and special permit approvals in order to allow for the creation of nine additional parking spaces and a fire lane on the Applicant's property. (Jenkins II, Return of Record [ROR], Item 1.) In reviewing site plan and special permit applications for multi-family dwellings, the zoning CT Page 1866 regulations require scrutiny by the Commission into conditions of parking, as well as vehicular and pedestrian traffic circulation. (JenkinsII, ROR, Item 65: Greenwich Zoning Regs., c. 6, §§ 15, 17, 155.) A public hearing on this application was held by the Commission on December 8, 1998. (Jenkins II, ROR, Item 18.) At the public hearing, the plaintiff attempted to pose questions to a Commission staff member, Hiram Peck, the assistant town planner of the town of Greenwich, on issues relating to parking and traffic conditions at the Applicant's property. (Jenkins II, ROR, Item 18, pp. 10-20.)
The Commission again approved the application to modify the site plan and special permit on December 17, 1998. (Jenkins II, ROR Item 24.) Subsequently, the plaintiff filed his second appeal, hereinafter referred to as Jenkins II, alleging that the Commission, in approving the application, acted illegally by denying the plaintiff the opportunity to cross-examine Hiram Peck at the public hearing on December 8, 1998. (Jenkins II, Appeal, ¶¶ 2, 7(a).) Additionally, the plaintiff alleges that the Commission's findings and decision granting the application are not supported by sufficient evidence. (Jenkins II, Appeal, ¶ 7(b).)
The Commission filed a motion to consolidate the cases for trial and briefing, and the motion was granted by the court on April 28, 1999.
 JURISDICTION
General Statutes § 8-8 governs appeals taken from a planning and zoning commission to the Superior Court. "A statutory right to appeal may be taken advantage of only by strict compliance with the statutory provisions by which it is created." (Internal quotation marks omitted.)Testa v. Waterbury, 55 Conn. App. 264, 268, 738 A.2d 740 (1999).
Aggrievement
"[P]leading and proof of aggrievement are prerequisites to the trial court's jurisdiction over the subject matter of a plaintiff's appeal."Jolly, Inc. v. Zoning Board of Appeals, 237 Conn. 184, 192, 676 A.2d 831
(1996). "In the case of a decision by a zoning commission . . . `aggrieved person' includes any person owning land that abuts or is within a radius of one hundred feet of any portion of the land involved in the decision of the board." General Statutes § 8-8(a)(1). The plaintiff alleges that he is the owner of land that abuts or is within a radius of one hundred feet of the subject property. (Jenkins I Appeal, ¶ 11; Jenkins II Appeal, ¶ 6.) At a hearing held by this court on October 12, 2000, the plaintiff was found to be an aggrieved person CT Page 1867 pursuant to General Statutes § 8-8(a)(1), in that he is the owner of land that abuts the subject property involved in the special permit applications.
Timeliness and Service of Process
An appeal shall be commenced by service of process within fifteen days from the date that the commission's notice of decision is published. See General Statutes § 8-8(b). Further, it shall be commenced by leaving the process with, or at the abode of, the clerk or chairman of the commission, and with the clerk of the municipality. See General Statutes § 8-8(e).
An affidavit of publication dated March 31, 1998, reports that the Commission's notice of decision was published on November 6, 1997. (Jenkins I, ROR, Item 23.) On November 18, 1997, the plaintiff's appeal in Jenkins I was commenced by service of process upon the Commission's chairperson, the town clerk, and the agents authorized to accept service of process for the Applicant. Accordingly, this court finds that the plaintiff's appeal in Jenkins I was commenced in a timely manner by service of process upon the appropriate parties.
As to the Jenkins II appeal, the record does not contain an affidavit of publication reporting publication of the Commission's notice of decision. The record does, however, include a notice of the Commission's decision as it appeared in the Greenwich Time newspaper on Friday, December 18, 1998, as well as a "proof of publication" of the notice, filed with the town clerk on December 18, 1998. (Jenkins II, ROR, Item 23.) On December 30, 1998, the plaintiff's appeal in Jenkins II was commenced by service of process upon the Commission's chairperson, the town clerk, and the agents authorized to accept service of process for the Applicant. This court, therefore, finds that the Jenkins II appeal was timely commenced by service of process upon the proper parties.
 SCOPE OF REVIEW
In ruling upon a site plan and special permit application "a planning and zoning board acts in an administrative capacity. . . . Generally, it is the function of a zoning board or commission to decide within prescribed limits and consistent with the exercise of [its] legal discretion, whether a particular section of the zoning regulations applies to a given situation and the manner in which it does apply. The . . . trial court . . . decides whether the board correctly interpreted the section [of the regulations] and applied it with reasonable discretion CT Page 1868 to the facts. . . ." (Brackets in original; citations omitted; internal quotation marks omitted.) Irwin v. Planning Zoning Commission,244 Conn. 619, 627-28, 711 A.2d 675 (1998).
"In applying the law to the facts of a particular case, the board is endowed with a liberal discretion and its action is subject to review by the courts only to determine whether it was unreasonable, arbitrary or illegal." (Internal quotation marks omitted.) Id., 628. When "the zoning commission does state the reasons for its action, the question for the court to pass on is simply whether the reasons assigned are reasonably supported by the record and whether they are pertinent to the considerations which the commission is required to apply under the zoning regulations." Id., 629. Concerning factual questions "a reviewing court cannot substitute its judgment for that of the agency. . . . If there is conflicting evidence in support of the zoning commission's stated rationale, the reviewing court . . . cannot substitute its judgment as to the weight of the evidence for that of the commission. . . . The agency's decision must be sustained if an examination of the record discloses evidence that supports any one of the reasons given." (Citations omitted; internal quotation marks omitted.) Id.
 DISCUSSION
As a preliminary matter, the court will address the Commission's argument that its approval of the permit and site plan involved inJenkins II renders the plaintiff's appeal in Jenkins I moot. Mootness implicates the subject matter jurisdiction of this court. See Gagnon v.Planning Commission, 222 Conn. 294, 297, 608 A.2d 1181 (1992). "The issue of subject matter jurisdiction can be raised at any time. . . . Once brought to the attention of the court, regardless of the form of the motion, it must be acted upon." (Citation omitted; internal quotation marks omitted.) Id. The Commission maintains that because the application involved in Jenkins II is directed towards the same subject matter and property as the application involved in Jenkins I, the Commission's proper approval of the application in Jenkins II renders the plaintiff's appeal in Jenkins I moot.
In Gagnon v. Planning Commission, 222 Conn. 294, 608 A.2d 1181 (1992), the Connecticut Supreme Court held that an administrative appeal had been rendered moot due to subsequent action by a planning commission. The plaintiff in Gagnon appealed from a planning commission's approval of an application for a subdivision. During the pendency of the appeal, the planning commission granted the applicant's request for a resubdivision of the same parcel. There was no appeal from the planning commission's CT Page 1869 action on the later resubdivision application. The issue presented was whether the action before the Gagnon court was rendered moot and, therefore, was subject to dismissal because of the planning commission's subsequent approval of the resubdivision application. The court concluded that "the unchallenged, subsequent approval of the resubdivision of the same parcel render[ed] the issues in the present action moot," and therefore, affirmed the judgment sustaining the trial court's dismissal of the appeal. Id., 295. See also Baumer v. Zoning Commission,45 Conn. App. 653, 656, 697 A.2d 704 (1997) (regarding rule of Gagnon as controlling precedent in holding an appeal involving site plan approval moot due to commission's subsequent, unchallenged approval of revised site plan application.) The Gagnon court explained that the potential burdens to the plaintiff stemming from the original subdivision approval no longer presented a justiciable issue, stating: "[i]t is a well-settled general rule that the existence of an actual controversy is an essential requisite to appellate jurisdiction; it is not the province of . . . courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow." Gagnon v. Planning Commission, supra, 299. Thus, a subsequent approval of an application rendered moot an appeal from a previous, related application.
In this case, the plaintiff has appealed from the Commission's approval of the subsequent application (Jenkins II). This court notes, however, that if the plaintiff is unsuccessful in challenging the Commissions' actions in his Jenkins II appeal, then the plaintiff's appeal in JenkinsI would be comparable to the appeal involved in the Gagnon case and, therefore, would similarly warrant dismissal as a moot case. In other words, if the Commission's decision to approve the Applicant's subsequent application is found to be sustainable on the record in Jenkins II, any harm to the plaintiff stemming from the Commission's approval of the earlier application involved in Jenkins I would no longer present a justiciable issue. Therefore, this court will first address the plaintiff's Jenkins II appeal.
Docket No. 170006 (Jenkins II)
First, the plaintiff argues that the Commission, in approving the Applicant's application, acted illegally by denying the plaintiff the opportunity to cross-examine the assistant town planner of the town of Greenwich, Hiram Peck,[4] a Commission staff member who was present but did not testify at the December 8, 1998 public hearing on the application. Next, the plaintiff argues that the Commission's decision granting the application was not supported by substantial evidence. In CT Page 1870 response, the Commission and the Applicant argue that the Commission does not have to allow the plaintiff to examine staff members and that the Commission's decision is supported by substantial evidence in the record. The Applicant further argues that disallowing the cross-examination of Hiram Peck was harmless error and that the Commission did not act illegally, arbitrarily or in abuse of its discretion when it approved the application.
As to the plaintiff's first argument, the plaintiff claims that he was deprived of his due process right to a fair hearing because he was denied the opportunity to introduce evidence which would have established that the Applicant's proposed modification would exacerbate traffic problems at the Applicant's property. The plaintiff maintains that the town's zoning regulations require close scrutiny by the Commission into conditions of parking as well as vehicular and pedestrian traffic circulation. The plaintiff cites chapter 6, §§ 15[5] (regarding site plan standards) and 17[6] (regarding authorization of use by special permit) of the Greenwich zoning regulations. Specifically, the plaintiff argues that the Commission prohibited him from cross-examining or eliciting testimony from Hiram Peck. Peck had authored a report which stated, among other things, that the Applicant's proposed "fire lane [was] intended to alleviate the existing illegal parking which presently occurs." (Jenkins II, ROR, Item 14a.)
The Commission and the Applicant contend that Hiram Peck was not properly subject to cross-examination at the December 8, 1998, hearing because he did not testify at the hearing and was not a witness for the Applicant. Moreover, the Commission asserts that the plaintiff had ample opportunity to review staff comments and reports prior to the public hearing and to rebut this evidence through testimony or by written submission. The Applicant argues that disallowing the cross-examination of Hiram Peck was harmless error because the questions to which the plaintiff sought answers were not relevant to the issues before the Commission.
Hearings before planning and zoning commissions are classified as administrative. See De Beradinis v Zoning Commission, 228 Conn. 187,198, 635 A.2d 1220 (1994). While hearings before administrative agencies are informal and are conducted without regard to the strict rules of evidence; see Huck v. Inland Wetlands Watercourses Agency, 203 Conn. 525,536, 525 A.2d 940 (1987); the Connecticut Supreme Court has recognized a common-law right to due process and fundamental fairness in administrative hearings. See Grimes v. Conservation Commission,243 Conn. 266, 273, 703 A.2d 101 (1997). However, "[t]his common-law CT Page 1871 right is not coextensive with constitutional due process." (Emphasis added.) Id., 273 n. 11. "The only requirement [in administrative proceedings] is that the conduct of the hearing shall not violate the fundamentals of natural justice. Fundamentals of natural justice require that there must be due notice of the hearing, and at the hearing no one may be deprived of the right to produce relevant evidence or to cross-examine witnesses produced by his adversary. . . . Put differently, due process of law requires that the parties involved have an opportunity to know the facts on which the commission is asked to act, to cross-examine witnesses and to offer rebuttal evidence." (Brackets in original; citations omitted; internal quotation marks omitted.) Id., 273-74; see also New England Rehabilitation Hospital ofHartford, Inc. v Commission on Hospitals Health Care, 226 Conn. 105,149-50, 627 A.2d 1257 (1993) (administrative agency "cannot properly base its decision . . . upon [independent] reports without introducing them in evidence so as to afford interested parties an opportunity to meet them."); Huck v. Inland Wetlands Watercourses Agency, supra,203 Conn. 536 (administrative due process requires due notice and right to produce relevant evidence); Connecticut Fund for the Environment,Inc. v. Stamford, 192 Conn. 247, 249, 470 A.2d 1214 (1984) (same). The purpose of administrative notice requirements is to allow parties to "prepare intelligently for the hearing." Jarvis Acres, Inc. v. ZoningCommission, 163 Conn. 41, 47, 301 A.2d 244 (1972).
The right to cross-examine witnesses at an administrative hearing, however, is not absolute. "There is . . . no right to cross-examination of speakers to the extent allowed in court proceedings. [R. Fuller, 9 Connecticut Practice Series: Land Use Law and Practice (1999) § 20.12, p. 434.]" Stephenson v. Stamford Zoning Board, Superior Court, judicial district of Stamford/Norwalk at Stamford, Docket No. 165104 So. (May 20, 1999, Karazin, J.). In Wadell v. Board of Zoning Appeals,136 Conn. 1, 68 A.2d 152 (1949), the president of a zoning board denied the opponents of an application for a variance the right to cross-examine a witness who testified at the public hearing. The Connecticut Supreme Court upheld the trial court's decision dismissing the opponents' appeal. Id. The court first explained: "The practice of the board of denying an opportunity for cross-examination cannot be sanctioned. A requirement of the board that [persons] desiring to cross-examine witnesses should ask questions through [the board] would place an unjustifiable restriction upon their rights. . . . It does not follow, however, that the board's ruling in this case requires that the appeal to the court be sustained. It is axiomatic that cross-examination is only permissible to the extent that it is relevant to the examination in chief. . . . We cannot find that the board committed harmful error in CT Page 1872 this case in refusing to permit cross-examination of the witness." (Citations omitted.) Id., 10. Thus, where proposed cross-examination is not germane or relevant to the issues before the board, the cross-examination may be disallowed. See id.; see also Huck v. InlandWetlands Watercourses Agency, supra, 203 Conn. 536 (administrative due process requires right to produce relevant evidence); Connecticut Fund forthe Environment, Inc. v. Stamford, supra, 192 Conn. 249 (same).
The right to cross-examine speakers before the agency generally does not extend to the agency members themselves. R. Fuller, 9 Connecticut Practice Series: Land Use Law and Practice (1999) § 20.12, p. 437. In order to protect the integrity of the administrative process, cross-examination of agency members is not permitted. Welch v. ZoningBoard of Appeals, 158 Conn. 208, 215, 257 A.2d 795 (1969); Breiner v.State Dental Commission, 57 Conn. App. 700, 715, 750 A.2d 1111 (2000). One limited exception, inapplicable in the present case, has been made to that rule: where the agency members have special expertise that they are going to apply when deciding the application, they must bring this up at the public hearing in order to give the applicant the right to ask questions and offer evidence in rebuttal. Feinson v. ConservationCommission, 180 Conn. 421, 428, 429, 429 A.2d 910 (1980). This rule does not apply to non-technical matters. Brookfield Plaza Ltd. Partnership v.Zoning Commission, 21 Conn. App. 489, 494, 574 A.2d 825 (1990). Agency members may rely on their personal knowledge in some matters such as traffic congestion, street safety and similar matters which do not involve any special expertise. Feinson v. Conservation Commission, supra, 427-28.
In the present case, the transcript from the public hearing held on December 8, 1998, reveals that the plaintiff was prevented from directly questioning Hiram Peck.[7] (Jenkins II, ROR, Item 18, pp. 11-12.) Hiram Peck, however, was not a witness at the hearing and he did not testify, speak or otherwise subject himself to cross-examination. By authoring certain documents for the Commission on non-technical matters such as traffic congestion; (Jenkins II, ROR Items 7d, 14a, 16j); Peck did not thereby subject himself to cross-examination. See Feinson v. ConservationCommission, supra, 180 Conn. 427-29.
In this case, the record reflects that the plaintiff was given ample opportunity to present his position to the Commission. The return of record shows that the evidence contained in the Applicant's file, including comments and reports authored by Commission staff members, was made accessible to the plaintiff prior to the December 8, 1998, public hearing. (Jenkins II, ROR, Items 7, 14 and attachments 14a-k.) The CT Page 1873 plaintiff was provided with opportunities to submit rebuttal evidence to the Commission prior to and at the hearing, and the plaintiff availed himself of these opportunities. (Jenkins II, ROR: Item 16 and attachments 16a-16k; Item 18, pp. 7-8.) The plaintiff and his attorney were permitted to address the Commission through its chairman and ask questions and comment on relevant matters. (Jenkins II, ROR, Item 18.) Accordingly, this court finds that the plaintiff was not deprived of the right to fundamental fairness and therefore, the plaintiff's appeal cannot be sustained on this ground.
Next, the plaintiff argues that the Commission's decision to grant the application was not supported by substantial evidence because "[t]here was no evidence before the [Commission] as to the number of `bedrooms' that had actually been constructed at the [Applicant's property] since 1993." (Plaintiff's Memorandum, p. 14.) The plaintiff insists that "no site plan can be scrutinized for adequacy of parking without reference to [chapter 6, § 155(1),[8] of the zoning regulations] and a determination of `bedrooms' . . . in a development." (Plaintiff's Memorandum, p. 13.) In response, the Commission and the Applicant argue that the Commission's decision is supported by substantial evidence in the record and that the Commission did not act illegally, arbitrarily or in abuse of its discretion.
"Judicial review of an administrative agency decision requires a court to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable." Cadlerock Propertiesv. Commissioner, 253 Conn. 661, 676, 757 A.2d 1 (2000). The trial court, however, may not "retry the case or substitute its own judgment for that of the administrative agency on the weight of the evidence or questions of fact. . . . Our ultimate duty is to determine, in view of all of the evidence, whether the agency, in issuing its [decision], acted unreasonably, arbitrarily, illegally or in abuse of its discretion" (Citations omitted.) Id.; accord Irwin v. Planning Zoning Commission, supra, 244 Conn. 627-29.
In describing the "substantial evidence rule," the Connecticut Supreme Court has stated "Conclusions reached by the commission must be upheld by the trial court if they are reasonably supported by the record. The credibility of the witnesses and the determination of issues of fact are matters solely within the province of the agency. The question is not whether the trial court would have reached the same conclusion, but whether the record before the agency supports the decision reached. . . . The action of the commission should be sustained if even one of the CT Page 1874 stated reasons is sufficient to support it. . . . The evidence, however, to support any such reason must be substantial . . . . This so-called substantial evidence rule is similar to the sufficiency of the evidence standard applied in judicial review of jury verdicts, and evidence is sufficient to sustain an agency finding if it affords a substantial basis of fact from which the fact in issue can be reasonably inferred." (Citations omitted; internal quotation marks omitted.) De Beradinis v.Zoning Commission, supra, 198-99.
In addition to the testimony and other evidence adduced at the public hearing held on December 8, 1998, the Commission had before it several separate submissions from its staff, the applicant, the zoning enforcement office, the Engineering Division of the Department of Public Works, the Fire Marshall, the plaintiff and others. (Jenkins II, ROR, Item 18; Items 19-22; Item 14 and attachments 14a-k; Item 16 and attachments 16a-16k.) In its decision, the Commission states that the "materials and documentation submitted as part of this application . . . showing a total number of 167 dwelling units with a total of 287 bedrooms" were in compliance with the standards I for site plan approvals.[9] (Jenkins II, ROR, Item 24.) The decision also states that "the application as proposed addresses an obviously existing safety issue regarding emergency vehicle access to the site." (Jenkins II, ROR, Item 24.) The approval of the application as a matter of public safety is supported by substantial evidence contained in the transcript from the public hearing.[10] (Jenkins II, ROR, Item 18, pp. 4, 6, 8, 23, 28.) Moreover, the proposed fire lane, as part of the application, had been approved by the town's Fire Marshall; (Jenkins II, ROR, Items 14h, 14i); and the zoning enforcement office had found that the "proposed additional parking and fire lane should alleviate a driveway parking bottleneck." (Jenkins II, ROR, Items 14g.)
In light of the above, this court finds that substantial evidence in the record supports the Commission's decision to approve the special permit and site plan modification application in order to allow for the addition of a fire lane and nine permanent parking spaces on the Applicant's property. This court concludes that the Commission's reasons for approving the application, to improve safety, traffic circulation and to facilitate the entry of emergency vehicles, are reasonable and supported by substantial evidence. The plaintiff's appeal, therefore, cannot be sustained on this ground. Accordingly, the plaintiff's appeal in Jenkins II must be dismissed.
Docket No. 162595 (Jenkins I)
CT Page 1875
In Jenkins I, the plaintiff appeals on the ground that he was not notified of the Applicant's application prior to the public hearing on that application, in violation of the zoning regulations. (Jenkins I
Appeal, ¶ 8.) The plaintiff alleges that because he is the owner of land that abuts the subject property, he was entitled to receive notice of the pending application prior to the hearing. (Jenkins I Appeal, ¶¶ 7, 8.) The plaintiff alleges that as a result of the lack of notice, the plaintiff did not attend the public hearing and therefore, the Commission acted illegally in approving the application because the plaintiff was deprived of his right to notice and opportunity to be heard. (Jenkins I Appeal, ¶¶ 9, 12(a).) The Greenwich zoning regulations require that, in advance of the hearing on the application, record owners of property abutting and across the street from the property subject to the application be given notice of the pending application.[11] The return of record reveals that while the Applicant mailed notices to certain persons owning land abutting the subject property, the Applicant did not notify plaintiff of the application prior to the public hearing. (Jenkins I, ROR, Item 4a and attached Exhibit A.)
Notwithstanding the apparent defect in notice described above, the plaintiff's appeal cannot be sustained. As previously discussed, the plaintiff's appeal in Jenkins II has been dismissed and therefore, the plaintiff's appeal in Jenkins I must be dismissed as a moot case. SeeGagnon v. Planning Commission, supra, 222 Conn. 294, 296-97 (approval of resubdivision application rendered moot the appeal from the original subdivision approval); Baumer v. Zoning Commission, supra,45 Conn. App. 653, 656 (approval of revised site plan). This court has already determined that the Commission's actions, in approving the application at issue in Jenkins II, did not provide any ground for sustaining the Jenkins II appeal. Consequently, any harm to the plaintiff stemming from the Commission's failure to properly notify him of the public hearing in the Jenkins I matter no longer presents a justiciable issue. Accordingly, the plaintiff's appeal in Jenkins I must be dismissed.
 CONCLUSION
For the foregoing reasons, the plaintiff's appeals in Jenkins II andJenkins I, respectively, are dismissed.
MINTZ, J.